**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**HARTFORD DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| BUSHNELL REGENCY, LLC, | Case No. 10-20929 (ASD) |
| Debtors. | |

**MOTION OF WELLS FARGO BANK MINNESOTA, N.A., AS TRUSTEE FOR THE ENTRY OF AN ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY**

TO:   HONORABLE ALBERT S. DABROWSKI
      UNITED STATES BANKRUPTCY JUDGE

Wells Fargo Bank Minnesota, N.A., as Trustee for the Registered Holders of GMAC Commercial Mortgage Securities, Inc. Mortgage Pass-Through Certificates, Series 2003-C2 (hereinafter, the "Lender"), through its undersigned counsel, McCarter & English, LLP, hereby submits this motion, pursuant to 11 U.S.C §§ 362(d)(1) and 362(d)(2) and Rule 4001 of the Federal Rules of Bankruptcy Procedure, seeking the entry of an order granting the Lender relief from the automatic stay to permit the Lender to continue its state court foreclosure action or alternatively, granting such other relief as may be appropriate (the "Motion"). In support of the Motion, the Lender respectfully represents:

**PRELIMINARY STATEMENT**

1.   Bushnell Regency, LLC (the "Debtor") failed for months to apply rental revenue to mortgage debt service payments or monthly assessments due to the Condominium Association where it owns 129 condominium units. Despite the indisputable mortgage defaults, the Debtor contested the foreclosure action. The Debtor negotiated a discounted payoff number with the

MEI 9806259v.1

Lender, but then was unable to perform. The Debtor commenced this bankruptcy proceeding on the eve of the state court law day. As explained below, the Debtor has no equity in the mortgaged property and there is no possibility of an effective reorganization in this case. The Lender should be granted relief from the automatic stay.

## JURISDICTION

2.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1334 and 28 U.S.C. §157(b)(2)(A) and (G), and the General Order of Reference from the United States District Court for the District of Connecticut, dated September 21, 1984. Venue is proper pursuant to 28 U.S.C. §1408. The statutory predicates for this Motion are sections 362(d)(1) and 362(d)(2) of Title 11 of the United States Code (the "Bankruptcy Code"). The Motion is governed by Rule 4001 of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND

3.  On March 25, 2010 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court, District of Connecticut (the "Bankruptcy Court"), Case No., 10-20929 (ASD). The Debtor continues to operate its business and manage its property pursuant to sections 1107 and 1108 of the Bankruptcy Code as a debtor-in-possession.

4.  No trustee or statutory committee has been appointed in this proceeding.

5.  In its petition commencing this bankruptcy proceeding ("Petition"), the Debtor designated this Chapter 11 case as a "single asset real estate" case as that term is defined in section 101(51B) of the Bankruptcy Code. See Petition [Docket No. 1].

ME1 9806259v.1

6. Contemporaneously with the filing of its Petition, the Debtor moved for an order seeking authority to use cash collateral on an interim basis. [Docket Nos. 8, 16].

7. On April 5, 2010, the Court entered an Order Granting the Debtor's Motion for Preliminary Order Allowing Use of Cash Collateral ("Interim Cash Collateral Order") [Docket No. 30]. The Monthly Budget attached to the Interim Cash Collateral Order reflects Monthly Gross Rental of $174,850, and monthly expenses (exclusive of mortgage debt service) of $129,275. Despite excess rental revenue of approximately $45,000 per month, the Debtor has accumulated substantial pre-petition debt as described below.

*The Pre-petition Loan Transaction and Rent Assignment*:

8. The Lender is the current holder of a promissory note ( the "Note"), a mortgage ("Mortgage"), and an Assignment of Leases and Rents ("Rent Assignment"), given by the Debtor in the original principal amount of $12,798,000. See Certification of Jeffrey C. Carter in Support of Lender's Motion (hereinafter, the " Carter Cert.").

9. On December 20, 2002, the Debtor executed the Note in favor of Morgan Stanley Mortgage Capital, Inc. ("Morgan Stanley"), or its assignees in the principal amount of $12,798,000. The Note was to be re-paid in monthly installments in the amount of $75,745.90 commencing on February 1, 2003, and continuing on the first day of each calendar month thereafter up to and including December 1, 2012. See Carter Cert., Exhibit A, page 1.

10. To secure its obligations under the Note, the Debtor executed an Open-End Mortgage and Security Agreement, dated December 20, 2002, in favor of Morgan Stanley (the "Mortgage") upon certain condominium units located at 100 Wells Street, Hartford, Connecticut

3

(the "Property"), which Mortgage was recorded on December 20, 2002, in Volume 4675, at Page 151 of the Hartford Land Records. The Mortgage is a mortgage on 129 condominium units and 194 parking spaces in a larger 180-unit condominium complex together with all rights provided in the Declaration of Condominium related to such units and parking spaces. See Carter Cert., Exhibit B.

11. The Debtor also executed an Assignment of Leases and Rents dated December 20, 2002, in favor of Morgan Stanley. The Assignment of Leases and Rents (the "Rent Assignment"), was recorded on December 20, 2002, in Volume 4675, at Page 234 of the Hartford Land Records. See Carter Cert., ¶ 5.

12. Morgan Stanley executed certain documents assigning its rights under the Loan Documents to the Lender. The Lender received a Note Allonge ("Allonge") from Morgan Stanley. See Carter Cert., Exhibit D. Morgan Stanley executed an Assignment of Open-End Mortgage and Security Agreement and Assignment of Assignment of Leases and Rents to Lender (hereinafter, the "Assignment"). See id., Exhibit E. Additionally, Morgan Stanley granted Lender an Omnibus Assignment ("Omnibus Assignment"), assigning all of Morgan Stanley's right, title and interest in any claims, collateral, insurance policies, certificates of deposit, letters of credit, escrow accounts, performance bonds, demands, causes of action and any other collateral arising out of and/or executed and/or delivered in or to or with respect to the Loan, together with any other documents or instruments executed and/or delivered in connection with or otherwise related to the Loan to Lender. See Carter Cert., Exhibit F (the Allonge, Assignment, and Omnibus Assignment shall be collectively referred to as the "Loan Documents") . The Assignment was recorded on November 25, 2003, in Volume 4904, at Page

4

ME1 9806259v.1

13 of the Hartford Land Records. The Lender is the current holder of the Loan Documents described above. See Carter Cert., at ¶ 5.

*Debtor's Pre-Petition Default Under the Loan*:

13.    The Loan is in default as a result of, among other things, Debtor's failure to make timely monthly payments since at least November, 2008. The Lender sent a notice of default and demand to Debtor in February, 2009. See Certification of David A. Reif in Support of Motion of Lender's Motion, Exhibit A (hereinafter, the "Reif Cert."). The Debtor failed to cure the default. Based on the continuing defaults and the Debtor's failure to cure, on April 20, 2009, by writ, summons, and complaint returnable on May 12, 2009, the Lender commenced an action to foreclose the Mortgage in the Connecticut Superior Court, Judicial District at Hartford, Case No. HHD-CV-09-5029382-S ("State Court Action"). See Reif Cert., Exhibit B.

14.    On November 9, 2009, the Debtor, Michael Jaffe, a guarantor of the Note, and the Lender entered into a Stipulation for Judgment of Strict Foreclosure ("the Stipulation"). The Stipulation provided, among other matters, that the amount of the debt on the Note was stipulated to be $15,280,153.41 as of October 31, 2009; that reasonable attorneys' fees and costs were stipulated to be $140,000; that appraisers fees were agreed to be $5,871; and that the debt would increase at a per diem rate of $3,566.88 from October 31, 2009 to the later of the date of the payment thereof or the date upon which title vested in the Lender, whichever last occurred. After reviewing the stipulation, the Superior Court, Sheldon, J., entered judgment upon the Stipulation on November 9, 2009 (the "Judgment"). See Reif Cert., Exhibit C.

15.    Under the Judgment, the Debtor had the option to satisfy the mortgage by a payment of $9,930,000 by the law date of January 11, 2010. The Debtor paid the Lender for

5

ME1 9806259v.1

three (3) extensions of the deadline to pay the discounted payoff. The Judgment was reopened on January 8, 2010; February 9, 2010; and March 9, 2010, for purposes of extending the law day, with the law day for the holder of the equity of redemption, the Debtor, being ultimately set for March 25, 2010. The State Court Action has been stayed by operation of the automatic stay, pursuant to section 362(a) of the Bankruptcy Code.

*Creditors of the Debtor*:

16. The Debtor has net revenue of approximately $45,000 per month, yet the following debt has accumulated:

- The mortgage debt to the Lender, where no debt service payments have been made since November, 2008;

- Unpaid condominium assessments of approximately $274,274. See Schedule of Assets and Liabilities [Docket No. 1];

- Unsecured creditor claims of approximately $544,000, a substantial portion of which may be insider debt. See Schedule F to Schedule of Assets and Liabilities [Docket No. 1];

- Upon informed belief, $105,194.66 in unpaid real estate taxes owed to the City of Hartford; and

- A claim filed by the Internal Revenue Service in this proceeding in the amount of $376,180. See Claims Register No. 3 (as amended).

*Value of the Real Property*

17. The Debtor values the Property subject to the Lender's Mortgage at $8,600,000. See Schedule A to Schedule of Assets and Liabilities [Docket No. 1]. The Lender has obtained two (2) appraisals over the last year, reflecting values of $8,600,000 and $8,875,000. See Carter Cert., Exhibits H and I.

ME1 9806259v.1

## **LEGAL ARGUMENT**

A.  **The Stay Should Be Modified to Allow the Lender to Continue the Foreclosure Action**

   *Stay Relief Is Warranted Under 362(d)(1) of the Bankruptcy Code*

18. Lender submits that stay relief is warranted under section 362(d)(1) of the Bankruptcy Code. Section 362(d)(1) provides that "the court shall grant relief from the stay ... for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1) (emphasis added).

19. Although "cause" is not expressly defined in the Bankruptcy Code, or in section 362(d)(1), it is settled law that a debtor's bad faith constitutes "cause" for relief from the automatic stay under section 362(d)(1). See In re AMC Realty Corp., 270 B.R. 132, 140-41 (Bankr. S.D.N.Y. 2001); see also In re Trident Assoc., Ltd., 52 F.3d 127, 131 (6th Cir. 1995), cert. denied, 516 U.S. 869 (1995).

20. The Second Circuit has summarized certain factors that Bankruptcy Courts should assess in determining whether a debtor's filing is a "bad faith" filing, justifying relief from the automatic stay. In the context of a single asset real estate case, as present here, Bankruptcy Courts should determine whether: (1) the debtor has only one asset; (2) the debtor has few unsecured creditors, whose claims are small in relation to those of its secured creditor; (3) the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt; (4) the bankruptcy proceeding, in essence, is a two party dispute between the debtor and its secured creditor which can be resolved in the pending state foreclosure action; (5) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditor to enforce its rights; (6) the debtor has little or no cash flow; (7) the

debtor can meet current expenses including the payment of personal property and real estate taxes; and (8) the debtor has any employees. See C-TC 9th Avenue P'ship v. Norton Co., 113 F.3d 1304, 1311 (2d Cir. 1997).

21. Lender submits that the badges of a bad faith filing articulated by the Second Circuit in C-TC 9th Avenue Partnership exist in this case, except for the fact that the Debtor employs approximately five (5) employees. This is a single asset real estate case where the claims of the Lender dwarf the claims of the unsecured creditors. The Debtor has not made a mortgage payment since November, 2008. See Carter Cert., at ¶ 6. The Debtor's one asset is subject to a foreclosure action as a result of the Debtor's mortgage default, and the Debtor commenced this proceeding on the eve of the expiration of the last law day extension. The Debtor was unable to perform under a substantial discounted payoff opportunity. Likewise, the Debtor, by its own admission, and as demonstrated above has insufficient cash flow to meet its expenses and service its mortgage debt, without any reasonable possibility to improve its fortunes, and the IRS has already lodged a sizeable claim against this estate for non-payment of taxes.

22. The unsecured debt in this case is nominal. Of the $554,145.89 reflected in the Debtor's Schedules of Assets and Liabilities, $331,000 is for Eagle Run LLC, and $202,052 is for The Jaffe Spirit, LLC. Both of those claims are classified as "equity contributions," payable to apparent insiders of the Debtor. As such, those claims are not general unsecured claims. Thus, after subtracting the value of those claims from the scheduled general unsecured claims, the aggregate claims of the unsecured class in this case totals a mere $21,040. See Schedule F to Debtor's Schedules of Assets and Liabilities [Docket No. 1].

ME1 9806259v.1

23.    Based on the above, the Lender respectfully submits that cause exists in this case requiring the Court to grant Lender the relief requested in this Motion.

### *Stay Relief Can Be Granted Under Section 362(d)(2) of the Bankruptcy Code*

24.    Lender respectfully submits that relief from the automatic stay under section 362(d)(2) of the Bankruptcy Code is also warranted in this case because the Debtor has no equity in the Property, and there is no reasonable probability that the Debtor can propose a confirmable plan of reorganization.

25.    Section 362(d) of the Bankruptcy Code provides that the Court "shall grant relief from the [automatic] stay"

> 2)    with respect to a stay of an act against property . . . , if--
>
>    (A)    the debtor does not have an equity in such property; and
>
>    (B)    such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d); see also In re Ecos Center, LLC, No. 08-22327(ASD), 2009 WL 790469 at *2 (Bankr. D. CT March 24, 2009); In re Broad Assocs. Ltd P'ship, 110 B.R. 632, 635 (Bankr. D. CT 1990). The movant has the burden of proof on the issue of lack of equity. The debtor has the burden of proof on all other issues, including that the property is necessary for an effective reorganization. See 11 U.S.C. 362(g); In re Ecos Center, LLC, 2009 WL 740469 at *2.

26.    With respect to the first prong of section 362(d)(2), it is clear that the Debtor has no equity in the Property. The Mortgage indebtedness exceeds $15,000,000. The Debtor values the property at $8,600,000, and the appraisals similarly value the property in the same range.

MEI 9806259v.1

27. Thus, there is no doubt that the Debtor has no equity in the Property. The Property is worth some $6,000,000 less than the indebtedness owed to the Lender, which makes the Lender not only the Debtor's largest secured creditor, but also its largest unsecured creditor.[1]

28. With respect to the second prong under section 362(d)(2), the Debtor bears the burden of showing that the property is "necessary to an effective reorganization." The Lender anticipates that the Debtor will claim that, *a fortiori*, it meets this burden, because the Property is the Debtor's only asset. But, such a response does not withstand scrutiny, either factually or legally.

29. In order to meet its burden under the second prong of section 362(d)(2), the Debtor must show that there is a reasonable probability for an effective reorganization. See C-TC 9th Avenue P'ship v. Norton Co., 113 F.3d 1304, 1310 (2d Cir. 1997) (discussing what debtor must show to meet the standard for "effective" reorganization).

30. Factually, the Debtor does not have the revenue or a source of funds to attempt to confirm a Plan. The Debtor's Budget reflects Monthly net rental revenue of $45,000. If the Lender's secured debt under section 506 of the Bankruptcy Code was fixed at $8,500,000, and paid with interest at 6%, then the monthly interest payments would be $42,500 (the Lender does not concede that this would satisfy the Debtor's obligations in treating the Lender's claim; the foregoing is provided only as an example). The Debtor would have $2,500 per month to pay administrative expenses, the $275,000 owed to the Condominium Association for all pre-petition assessments, the $100,000 owed in real estate taxes, principal amortization on the mortgage debt owed to the Lender, the money owed to the Internal Revenue Service, and a dividend to

---

[1] Pursuant to section 506 of the Bankruptcy Code, the deficiency claim of the Lender will be deemed a general unsecured claim. The unsecured deficiency claim held by the Lender is more than 80% of the aggregate claims of all unsecured creditors in this case. See Schedule F to Debtor's Schedules of Assets and Liabilities [Docket No. 1].

ME1 9806259v.1

unsecured creditors. Funds simply do not exist to meet the payments requirements the Debtor would need to meet in order to confirm a proposed Plan.

31.    Legally, the Debtor cannot confirm a Plan. The Lender would object to any Plan proposed by the Debtor. The Debtor has not made any debt service payments since November, 2008, then negotiated a discounted pay off opportunity, but did not perform. As the rental revenue is subject to the Rent Assignment, it can not be used other than to pay the Lender. Thus, even the *de minimis* funds possibly remaining after payment to the Lender (with the Lender reserving all rights as to the treatment of its claim under the Plan) are not available to fund a Plan. The Lender would vote "no" on its unsecured deficiency claim. Thus, there would not be an "impaired" class voting in favor of the Plan, and the Plan would fail to meet the requirement under section 1129(a)(10) of the Bankruptcy Code. Finally, the Debtor can not fulfill any of the requirements to "cram down" a plan under section 1129(b) of the Bankruptcy Code.

32.    The Debtor would have to raise substantial amounts of new working capital in order to fund any plan of reorganization. That prospect is highly unlikely since the Debtor has no unencumbered assets that could be pledged as collateral to support such new financing. This has already been demonstrated by the fact that the Debtor was unable to "reorganize" even with the substantial discounted pay off opportunity offered by the Lender.

33.    This Court should find that the Debtor has no realistic possibility to offer an effective plan of reorganization that could be confirmed under section 1129 of the Bankruptcy Code. Thus, the Lender respectfully submits that the automatic stay can be modified pursuant to section 362(d)(2) of the Bankruptcy Code to allow the Lender to complete the state court foreclosure action.

11

ME1 9806259v.1

**WHEREFORE**, the Lender respectfully requests that the Court enter an order granting the relief requested in this Motion, and granting such other and further relief as is just and proper.

Respectfully submitted,

McCARTER & ENGLISH LLP
Attorneys for Wells Fargo Bank Minnesota, N.A.,
as Trustee for the Registered Holders of GMAC
Commercial Mortgage Securities, Inc. Mortgage
Pass-Through Certificates, Series 2003-C2.

/s/ *David M. Bizar*
David M. Bizar (CT 20444)
David A. Reif (CT 00244)
Joseph Lubertazzi, Jr. (*pro hac vice granted*)
City Place I
185 Asylum Street
Hartford, CT 06103
Tel:    (860) 275-6700
Fax:   (860) 724-3397

Dated: April 21, 2010
Hartford, CT

ME1 9806259v.1